IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NICOLO NISBETT, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> RECONART, INC. et al., ) <br> ) <br> *Defendants*. ) <br> ) | Civil Action No. 1:16-cv-1467 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

Plaintiff Nicolo Nisbett has brought a five-count Complaint against Defendants Reconart, Inc. and Hristo Marintchev. Defendants have moved to dismiss. (Dkt. No. 12). The matter has been fully briefed, and the Court found that a hearing was not necessary to resolve the issues presented by the parties. Nisbett brings five claims against Defendants. These claims fall into two categories. First, Counts I, II, and V allege breach of contract and quantum meruit claims based on Plaintiff's 5.5 years of work for Reconart. Second, Counts III and IV allege wrongful termination and related claims arising from Plaintiff's termination. For the following reasons, the Court **DENIES** the motion to dismiss for the breach of contract/quantum meruit claims, but **GRANTS** the motion for the wrongful termination claims. Because only the wrongful termination claim is alleged against Defendant Marintchev, he is hereby **DISMISSED** from the case entirely.

### I. BACKGROUND

Plaintiff Nisbett is a software sales and marketing professional. Nisbett met Marintchev, the majority owner of Reconart, while Nisbett was working with a company called Fiserv in

1

2005.  In 2010, Marintchev convinced Nisbett to join Reconart and manage the sales and marketing department of the software startup.  At the time, Nisbett had a job offer with Fiserv in his home country of England, but he decided to join Reconart, in part, because Marintchev could sponsor his permanent residence application in the U.S.

Nisbett began working full-time and exclusively for Reconart in October 2010.  His duties were significant.  *See* Compl. ¶ 7.  In exchange for his work, "Marintchev promised Nisbett 10 percent commission on all sales made by the company."  *Id.* ¶ 8.  Marintchev also promised Nisbett a 24.5% ownership stake in Reconart (Marintchev would keep his 51% stake and a third party, Ivan Popov, would also have a 24.5% stake).  In spite of these promises, Nisbett "willingly deferred such compensation while the company was starting, but always expected that Marintchev would keep his word to pay commissions or to otherwise reasonably compensate him for his significant services."  *Id.*  Reconart paid salaries to Marintchev, Popov, and its other employees.

Reconart launched its software product in 2011, and Nisbett's duties increased accordingly.  He began working 60-80 hour weeks and staying up late and on weekends so he could speak with international clients in Australia and other parts of the world.  Due in part to these efforts, Reconart experienced steady growth from 2011 to 2014.  Sales dipped in 2015,[1] but they saw an uptick again in Q1 of 2016.

During his entire 5.5 years at Reconart, Nisbett received only $74,583 in actual compensation, all of which came in 2012 and 2013.  Throughout his tenure at the company, Reconart reimbursed Nisbett for expenses.  Prior to March 1, 2016, Marintchev had never questioned Nisbett's expenses.

---

[1] Nisbett asserts that this dip in sales was due to Maintchev's inept handling of American Express as a potential client of Reconart.  *See* Compl. ¶¶ 13, 30–31.

On November 3, 2015,[2] Marintchev, Popov, and Nisbett executed a Corporate Shareholders' Agreement (the "Agreement") that is central to the parties' dispute in this case. Generally, the Agreement sets forth the ownership structure of Popov and Nisbett owning 24.5% of the company and Marintchev owning 51%. The Agreement also sets forth the owners' capital investment in the company and contemplates their appointment as officers of the corporation. There are a few key provisions that are worth summarizing here:

§ 1.1.6. "Capital Contribution"
This term is defined as "the cash and services provided by each Shareholder for shares of common stock of the Corporation as listed in Exhibit A."

§ 1.1.16. "Starting Assets and Liabilities"
This term is defined as the "tangible and intangible property owned or owed by the Corporation and listed in Exhibit A."

§ 3.1. Capital Contributions
This Section states that Marintchev has made a contribution of $510 while Nisbett and Popov have each contributed $245.

§ 4.1. Board of Directors.
This Section states that Marintchev, Popov, and Nisbett shall make up the original Board of Directors. They shall continue until: (a) they are no longer employed; (b) death, resignation, or disability; or (c) they are removed by a supermajority vote of the shareholders.

§ 4.2. Officers
This Section provides that Nisbett shall be the Chief Sales Officer of the corporation; Marintchev is listed as the President and CEO; and Popov is listed as the Chief Technology Officer.

It further provides: *"The Board shall set the initial terms of employment for each individual and embody them in an Employment Agreement to be signed with each party at the time this Agreement is signed."*

These individuals shall serve as officers until (a) death, resignation, or disability; or (b) dismissal by a supermajority vote of the Board.

§ 4.3. Voting
A supermajority vote is required to: "discharge [] any employee identified in paragraph 4.2 above, without cause."

---

[2] The Agreement is dated October 31, 2015, but was signed on November 3, 2015.

§ 5.5. Separation of Shareholders from Employment
   This section provides that a shareholder who is terminated as an employee "for cause" is deemed to have made a transfer of common shares, which will be purchased for "book value."

§ 8.3. Entire Agreement
   "This writing contains the entire understanding of the parties, and may not be changed orally, but only by an agreement in writing signed by all of the Shareholders and the Corporation."

Exhibit A lists the starting Assets and Liabilities of the Company:
   Assets: Software – Reconart Software
   Liabilities: Shareholder Loans (Exhibited by promissory notes)
      $635,000 loan for Marintchev
      $59,000 loan for Popov
      $53,000 loan for Nisbett

Shareholders' Agreement, Opp'n, Ex. A (Dkt. No. 13-1).

Nisbett was terminated in April 2016. Specifically, on April 20, 2016, Marintchev sent Nisbett an email detailing the reasons for his termination; they were: (1) decreased sales; (2) poor leadership; and (3) poor communication. *See* Compl. ¶ 28. The termination became effective on May 2, 2016 when the parties held a shareholders' meeting and Marintchev and Popov used a supermajority vote to formally oust Nisbett. Compl. ¶ 16.

At that time, Reconart contends that Nisbett's shares were valued at $34,255 net book value and would be paid two years after termination. Nisbett also alleges that there is "at least $21,227 in expenses outstanding." Moreover, Nisbett alleges that Reconart has refused to pay Nisbett any compensation for his 5.5 years of labor.

## II. STANDARD OF REVIEW

In considering a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, construing them in the light most favorable to the plaintiff. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

To defeat the motion, the Plaintiff must allege enough allegations of fact "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this regard, bald legal assertions without factual support need not be accepted. *Id.* Indeed, the Court may not rely on mere "labels and conclusions" or the complaint's "formulaic recitation of the elements of a given cause of action in deciding the motion. *Id.* at 555.

In conducting its analysis, the Court may take judicial notice of matters of public record and may also consider documents attached to the complaint, "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III. DISCUSSION

Nisbett's five counts are as follows: (1) breach of oral contract for the 10% commission that Marintchev promised; (2) alternatively, quantum meruit/unjust enrichment for the fair market value of Nisbett's labor over his 5.5 years of employment; (3) wrongful discharge; (4) breach of the implied duty of good faith and fair dealing for the termination; and (5) breach of contract for the unreimbursed expenses. The Court finds that Counts I, II, and V all state a claim for relief and therefore the Motion is hereby DENIED as to these counts. Counts III and IV, however, must be dismissed.

A.  **Count III: Wrongful Termination**

Nisbett fails to state a claim for wrongful termination. Importantly, as Nisbett clarifies in his opposition brief, this also means that Marintchev should be dismissed as a defendant because only Count III is asserted against him in his personal capacity. *See* Opp'n at 10–11. This conclusion also forecloses any argument that Plaintiff is entitled to attorney's fees under the terms of the Shareholders Agreement.

In Virginia, at-will employees can be discharged for any reason not prohibited by law. *See McFarland v. Virginia Retirement Servcs. Of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007). Moreover, "Virginia courts have strenuously adhered to the presumption of at-will employment." *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). This presumption may be rebutted by evidence that the employment was fixed in duration or was otherwise subject to "an absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." *Id.* In the absence of this evidence, however, the court "will not imply a just cause provision where one is not explicitly provided." *Id.* at 238 (quoting *Sullivan v. Snap-On Tools Corp.*, 708 F. Supp. 750, 752 (E.D. Va. 1989). Thus, "when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at-will, upon giving the other party reasonable notice." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (1987).

Nisbett attempts to get around this law with two arguments. First he asserts that, because Marintchev attempted to justify his termination decision, Nisbett was therefore terminated for cause. This argument is unavailing. Marintchev's termination email may have provided some reasoning for the Company's decision to terminate Nisbett, but that fact alone is insufficient to prove that Nisbett was anything but an at-will employee. Indeed, most employees, whether at-will or otherwise, will want to know the reason why they are being terminated. Therefore, providing reasons for termination is more properly seen as an employment courtesy rather than an action which, on its own, rebuts the presumption of at-will employment.

The second argument relies on the language of the Shareholders' Agreement, which provides that a supermajority can terminate any of the Corporation's officers without cause. Shhs. Agreement § 4.3. Plaintiff therefore argues that there was an implied for-cause removal

6

provision in his employment contract. In addition, he argues that the payment of his outstanding shares was done in accordance with the terms of a "for cause" termination under Section 5.5, which further suggests he was not strictly an at-will employee.

As an initial matter, this argument contradicts Nisbett's entire breach of contract argument theory because it cuts against the assumption that the Shareholders' Agreement is entirely separate from the oral employment agreement. As noted above, the Court concluded that Nisbett successfully alleged an oral contract that fell outside the reach of the Shareholders' Agreement and the integration clause contained therein. Thus, accepting the fact that the oral employment contract is separate from the Agreement, there is nothing at all in the Complaint to rebut the presumption of at-will employment, and the motion to dismiss must be granted for that reason. Importantly, Plaintiff does not assert a breach of the Shareholder's Agreement and does not attempt to hold Defendants to the Agreement's explicit terms. Instead, he appears to argue that the termination provisions in the Shareholders' Agreement were somehow incorporated into the oral employment contract. However, he does not provide any coherent theory for why this would be the case.

Moreover, even if the termination provisions superseded, or were incorporated into, the oral employment contract, this claim still fails. If Reconart was restricted in any way in its ability to terminate Nisbett, that restriction came in the form of a supermajority voting requirement. Thus, under any reading of the Agreement, *cause was not needed to terminate him* when his fellow board members wanted him out. And as the Complaint alleges, Popov and Marintchev did in fact vote to terminate his employment, thus providing the requisite supermajority. *See* Compl. ¶ 16.

Plaintiff nonetheless asserts that his termination "without cause" was inconsistent with how his shares were paid out. *See* Compl. ¶ 17. Section 5.5 of the Agreement provides that if a shareholder "is fired by the Corporation *for cause* he is deemed to have made a Transfer of his Common Shares following his termination" and will be paid the fair value for those shares within 24 months. According to the Complaint, this is how Marintchev told Nisbett that he would be paid. However, the fact that Marintchev and Reconart acted in accordance with this provision on its own is insufficient to rebut the presumption of at-will employment or the explicit termination provisions of the Shareholders' Agreement. It may establish a separate cause of action for shares that were improperly transferred or improperly paid, but that would be a distinct claim that would arise under the terms of the Shareholders' Agreement. It does not qualify as a restriction on the employer's ability to govern its labor force, especially in light of Virginia's strong presumption for at-will employment.

B.  **Count IV: Breach of the Implied Duty of Good Faith and Fair Dealing**

Count IV alleges a breach of the implied duty of good faith and fair dealing for Nisbett's termination from Reconart. As a preliminary matter, Nisbett concedes that Virginia courts "have refused to locate the duty in at-will employment contracts." Opp'n at 9 (quoting *SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 806 F. Supp. 2d 872, 893 n.51 (E.D. Va. 2011), *vacated on other grounds*, 508 F. App'x 243 (4th Cir. 2013)). Therefore, his entire argument rests on the contention that his alleged oral employment contract somehow rebutted the presumption of at-will employment. As discussed above, he has not done so. Therefore, this argument must fail.

Moreover, it is not clear that the duty of good faith and fair dealing applies in any employment context. Plaintiff's primary support for his position is a footnote in *SunTrust*. 806 F. Supp. 2d. at 893 n.51. That footnote reads:

> [Virginia courts] have refused to locate the duty in at-will employment contracts. *See, e.g., Spiller v. James River Corp.,* 32 Va. Cir. 300 (1993); *Burton v. Central Fidelity Bank,* 14 Va. Cir. 159 (1988). These decisions, however, are not applicable to the insurance context. The at-will employment relationship is a unique creature of the law, which rests on the presumption that an employer can fire an employee for virtually any reason it desires, without explanation. An implied duty of good faith and fair dealing in such contracts would run contrary to their very purpose and substance.

*Id.* Thus, even the footnote does not make the legal assertion that Plaintiff is making now. In addition, *SunTrust* dealt with an insurance contract, not an employment contract, and it is inapplicable for that reason. Furthermore, the *SunTrust* opinion was vacated (for other reasons) and therefore has no binding effect.

More importantly, however, neither party can cite to a single case that has found the duty of good faith and fair dealing in any employment context. And other recent cases have held that Virginia law "does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular." *Chapman v. Asbury Auto. Grp., Inc.,* No. 3:15CV679, 2016 WL 4706931, at *6 (E.D. Va. Sept. 7, 2016) (quoting *Devnew v. Brown & Brown, Inc.,* 396 F. Supp. 2d 665, 671 (E.D. Va. 2005)). Thus, although some courts have reserved judgement on the possibility that the duty of good faith and fair dealing might apply in contexts where employment contracts are not at-will, they are nonetheless reluctant to do so because of the complications that arise when Courts insert themselves into businesses' employment decisions. *Harik v. Nat'l Aeronautics & Space Admin.,* No. CIV.A. 4:06CV56, 2006 WL 2381964, at *13 (E.D. Va. Aug. 16, 2006), *aff'd,* 219 F. App'x 325 (4th Cir. 2007) ("[T]he court will not review the "wisdom or folly" of the

9

defendant's business judgment, or second guess its legitimately based personnel decisions."). The Court therefore finds that the facts of this case do not support a separate claim for a breach of the covenant of good faith and fair dealing under Virginia law.

### III. CONCLUSION

This case can be divided into two sets of claims: (1) contractual/quantum meruit claims; and (2) employment claims. The motion to dismiss is hereby **DENIED** for the contractual/quantum meruit claims (Counts I, II, and V) because the complaint sufficiently alleges an employment relationship that is outside the scope of the integration clause in the Shareholders' Agreement. For the employment claims, however, the motion to dismiss is hereby **GRANTED** (Counts III and IV) because the Complaint does not sufficiently rebut the presumption of at-will employment. In addition, the Complaint does not sufficiently allege that a for-cause termination occurred as a factual matter because Defendants complied with the termination provisions of the Shareholders' Agreement. As a corollary to this conclusion, Marintchev is hereby **DISMISSED** as a defendant and Plaintiff may not recover for attorney's fees under the Shareholder's Agreement.

An appropriate order shall issue.

Liam O'Grady
United States District Judge

May 3, 2017
Alexandria, Virginia